# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **DAMAN SPICER,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:10CV1192SNLJ/MLM |
| ) | |
| **DAVE DORMIRE,** ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Damon Spicer ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc.1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc.8. Petitioner has not filed a Reply. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 6.

## I.
## BACKGROUND

Petitioner was charged by Information in Lieu of Indictment, as follows: Count I, the Class B felony of Kidnaping, in that, on February 2, 2004, Petitioner unlawfully confined K.R., without her consent for a substantial period for the purpose of facilitating the commission of the felony of Forcible Rape; Count II, the felony of Forcible Rape, in that, on February 2, 2004, Petitioner knowingly had sexual intercourse with K.R., by the use of forcible compulsion and in the course of such offense, Petitioner displayed a deadly weapon; Count III, the felony of Armed Criminal Action, in that Petitioner committed the felony of Forcible Rape charged in Count II by, with, and through the knowing use, assistance, and aid of a deadly weapon; Count IV, the first degree Class A felony of

Child Molestation, in that, on February 2, 2004, Petitioner subjected K.R., who was then less than fourteen years old, to sexual contact, and in the course of this offense displayed a deadly weapon; and Count V, Armed Criminal Action, in that Petitioner committed the felony of Child Molestation, described in Count IV, by, with, and through the knowing use, assistance, and aid of a deadly weapon. In Count VI, Petitioner was charged as a persistent misdemeanor offender.

On January 29, 2008, Petitioner plead guilty to kidnaping, forcible rape, first-degree child molestation, and two counts of armed criminal action. Resp. Ex. B at 14-15. At Petitioner's plea hearing the court explained to Petitioner the rights he was relinquishing by pleading guilty and Petitioner testified that he understood what the court explained to him. Resp. Ex. A at 5-7. Additionally, the prosecutor stated what the evidence would be if the matter went to trial. Specifically, the prosecutor stated that the State would prove that:

> [T]he victim KR was ... [o]n February 2nd of 2004, ... less than -- had been ten years old less than four months.
>
> [Petitioner] saw the victim leaving - - literally buying candy from the store and indicated to her that he knew her family, her mother, and would like to offer her a ride. She took the ride. [Petitioner] drove her from 9900 Natural Bridge, ... that's where he picked her up, where she got in the car, he took her to 8719 Evans where he had her in the car ... .
>
> [Petitioner] had the victim KR in the car, he pulled a weapon on her, a gun, she described a black gun. He struck her four times in her abdomen and then he ordered her to be in the back seat of that vehicle. She gets in the back seat of the vehicle, the defendant feels all over her body on her breasts, ... she really didn't have breasts ... . He felt those and the State will show as an exhibit her tee-shirt which was torn. She said he took her clothes off of her. After taking her clothing off of her he pulled his pants down and he robbed her of her innocence by thrusting himself, his penis into her vagina on numerous occasions until she said white stuff was on her legs. He wiped her, wiped the white stuff off and perhaps he thinks he's getting it all off, but he doesn't. She runs. She gets out of the car some how. The victim will tell you that he ordered her back into the front seat of the car ... and she wouldn't get in. ... She runs towards the street. Russell Carter will tell you that he almost hit her with his car when he was traveling on Evans as she runs into the street.

> Tiffany Stamps, a witness ... will tell you that she saw a gray four-door Dodge Stratus pulling out of a driveway from an abandoned house, ... and he pulled out with great speed almost hitting her car, that's why she noticed the car. ... At the same time, she sees a little ten-year-old girl, who, by the way at the time weighed seventy pounds and [Petitioner] weighed a hundred and seventy-five pounds. She sees the little girl running waving her hands trying to get help.
>
> Mr. Carter pulls over and the little girl says I've just been raped. She gets in the car and he takes her to the police station where the paramedics come and they give her first aid and her mother is called and she's taken to the hospital ... .
>
> She goes to Children's Hospital, the Doctor ... will testify that he performed a rape kit. ... .
>
> Alan Derickson, also with the lab, analyzed the semen, but at this time did not have a suspect because at this time the victim did not know [Petitioner]. ... . The Defendant did threaten the victim, told her that her mommy and her brothers and sisters would be attacked if she didn't do what he said at gunpoint.
>
> So now Alan Derickson puts this semen sample into a bank and two years later he gets a hit and he actually contacts the police department. Based on [Petitioner] being a person of interest, put together a lineup, a six-photo lineup. The police take it to the victim, the victim looks at the six and immediately says that's the guy, number four and number four is [Petitioner].
>
> With this information, the police go to [Petitioner] and they get a DNA sample, he gives it to them by consent, they take it to the lab, the lab confirms that it is [Petitioner's] DNA, it was his semen spoiled onto the victim. At that time Alan Derickson says it's one and fifteen quadrillion that it's [Petitioner].

Resp. Ex. A at 9-13.

Petitioner testified that the facts as described by the prosecutor were true and correct. Resp. Ex. A at 13. The court accepted Petitioner's guilty plea and sentenced him to consecutive terms of five years imprisonment on the kidnaping charge, life imprisonment on the rape charge, and fifteen years imprisonment on the child molestation charge. The court also sentenced Petitioner to ten years imprisonment on each of the two counts of armed criminal action, to be served concurrently with the other sentences. Resp. Ex. B at 16-20.

3

Petitioner timely filed a pro se post-conviction relief motion. Resp. Ex. B at 24-40. Counsel was appointed and filed an amended motion. Resp. Ex. B at 43-45. The motion court denied Petitioner post-conviction relief. Resp. Ex. B at 74-82. On August 13, 2008, Petitioner filed an appeal with the Missouri appellate court. Resp. Ex. C. By decision, dated November 17, 2009, the Missouri appellate court affirmed the decision of the motion court. Resp. Ex. E. The Missouri appellate court issued the mandate on November 17, 2009. Resp. Ex. F.

On July 2, 2010, Petitioner filed his § 2254 Petition, in which he raises the following issue:

**Petitioner was denied effective assistance of counsel because his plea counsel did not inform him that the State could seek to civilly commit Petitioner as a sex offender after he served his criminal sentences.**

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or

4

involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams, 529 U.S. 362, the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland

5

v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

# III.
# EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

Petitioner in the matter under consideration raised the issue which he raises before this court before the Missouri appellate court. As such, the court finds that he has not procedurally defaulted this issue and that he has exhausted his State remedies.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. Petitioner filed his § 2254 Petition within this limitation period. As such, the court finds that his § 2254 Petition is timely filed.

# IV.
# STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of

counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has emphasized that the standard to be applied by a federal court when reviewing a Strickland claim of a state prisoner pursuant to § 2254 is "doubly deferential judicial review." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). The Court further explained that "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

The United States Supreme Court further has held that to establish the ineffectiveness of counsel when a guilty plea is entered, a habeas petitioner must show that counsel's representation fell below "an objective standard of reasonableness" and that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Gumangan v. United States, 254 F.3d 701, 705 (8th Cir. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "A no-contest guilty plea is valid if 'the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Wilcox v. Hopkins, 249 F.3d

720, 724 (8th Cir. 2001) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). See also Griffith v. Wyrick, 527 F.2d 109, 113 n.6 (8th Cir. 1975) ("If all that was present in this case was an inaccurate prediction of sentence by defendant's counsel ... an otherwise voluntary plea of guilty would not be vitiated.") (citing Masciola v. United States, 469 F.2d 1057, 1059 (3rd Cir. 1972) (per curiam); Swanson v. United States, 304 F.2d 865, 866 (8th Cir.1962) (per curiam)).

## V.
## DISCUSSION

Petitioner alleges that he was denied effective assistance of counsel because his plea counsel did not inform him that the State could seek to civilly commit Petitioner as a sex offender after he served his criminal sentences.

Upon addressing the issue which Petitioner raises before this court, the Missouri appellate court held:

> After a guilty plea, effectiveness of counsel is relevant only to the extent that it affects the voluntariness and knowledge with which the plea was made. Peiffer, 88 S.W.3d at 445. To obtain an evidentiary hearing on a claim of ineffective assistance of counsel, a movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and that movant was prejudiced. Coates v. State, 939 S.W.2d 912, 914 (Mo. banc 1997). To show prejudice, a movant must demonstrate there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty but instead would have insisted upon proceeding to trial. Id. To be valid, a guilty plea must be made voluntarily and intelligently, with knowledge of the "relevant circumstances and likely consequences," including the direct consequences of the plea. Brady v. United States, 397 U.S. 742, 748 (1970). Both the trial court and defense counsel have a duty to inform the defendant of the direct consequences of pleading guilty, but not the collateral consequences. Ramsey v. State, 182 S.W.3d 655, 659 (Mo. App. 2005); Huth v. State, 976 S.W.3d 514, 516 (Mo. App. 1998). Direct consequences "are those which definitely, immediately, and largely automatically follow the entry of a plea of guilty." Ramsey, 182 S.W.3d at 659; Huth, 976 S.W.3d at 516 ... . Counsel's failure to inform a movant of collateral consequences of his or her guilty plea is an insufficient basis for a claim of ineffective assistance of counsel. Ramsey, 182 S.W.3d at 659; Huth, 976 S.W.3d at 517-18.
>
> In his first point, movant asserts that ... his convictions should be set aside because both the court and defense counsel failed to inform him that forcible rape and child molestation were predicate offenses under the Sexually Violent Predator (SVP)

11

statute, section 632.480 et seq., and that by pleading guilty, movant risked indefinite and involuntary civil commitment under the SVP statute at the conclusion of his prison sentence. Movant also maintains that regardless of whether SVP commitment is a collateral or direct consequence of a guilty plea, fundamental fairness ... requires disclosure.

The potential for future civil commitment under the SVP statute is a collateral consequence to a guilty plea, and neither the trial court nor defense counsel is required to inform movant of such a possibility. Carter v. State, 215 S.W.3d 206, 209-11 (Mo. App. 2006); Morales v. State, 104 S.W.3d 432, 437 (Mo. App. 2003). Civil commitment under the SVP statute is not a definite, immediate, or automatic consequence following a guilty plea because there are multiple procedures under the SVP statute that must be followed before a person is deemed a "sexually violent predator" and is civilly committed. Morales, 104 S.W.3d at 435-37.

Movant argues that "[e]ven if the possibility [of] future involuntary civil commitment proceedings is collateral, fundamental fairness required that the plea court inform [movant] that he was pleading guilty to sexually violent predicate offenses." In support, movant relies on a decision from New Jersey, ... and a concurring opinion from a Florida case. However, in Missouri, fundamental fairness does not require that a movant be informed of the potential of civil commitment prior to pleading guilty. Carter, 215 S.W.3d at 209-10 (specifically holding that State v. Bellamy, 835 A.2d 1231 (N.J. 2003), on which movant relies, should not be followed in Missouri). ... .

The motion court did not clearly err in denying movant's claim that he was required to be advised of the potential SVP consequences of his plea. Point one is denied.

Resp. Ex. E at 3-5.

The court has set forth above the federal standard applicable to determining whether a defendant who has plead guilty received ineffective assistance of counsel. Additionally, in regard to a defendant's being informed of the collateral consequences of a guilty plea, the Eighth Circuit has held:

A plea of guilty or no contest must be entered voluntarily and intelligently, since the accused waives a number of constitutional rights by doing so. In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Court instructed that relinquishments of constitutional rights must be "done with sufficient awareness of the relevant circumstances and the likely consequences." Id. at 748, 90 S.Ct. at 1469, 25 L.Ed.2d 747. However, the accused need only be informed of the "direct consequences" of the guilty plea. Id. at 755, 90 S.Ct. at 1472, 25 L.Ed.2d 747.

12

> It is not necessary to attempt to inform the defendant of all the indirect or collateral consequences. United States v. Lambros, 544 F.2d 962, 966 (8th Cir.1976), cert. denied, 430 U.S. 930, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). *"The distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment."* Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir.) ... .

George v. Black, 732 F.2d 108, 110 (8th Cir. 1984) (emphasis added).

The court, in George, continued to consider that the trial court, in that matter, informed the defendant of the direct consequences of his plea; that the prosecutor explained the charges and the possible sentence; that the judge explained, in detail, the constitutional rights which the defendant would be waiving by entering a guilty plea; that the defendant stated that he understood the nature of the rights he was waiving; and that the court established a factual basis for the defendant's guilty plea. Under such circumstances, the court, in George, found that the defendant waived his rights "freely, voluntarily, intelligently, knowingly, and with knowledge and understanding of the consequences." 732 F.3d at 110. The court concluded, in George, that the failure of the court to inform the defendant that he would be subjected to a mental health commitment proceeding after his release from prison did not render the defendant's plea involuntary because commitment to an institution would not result definitely, immediately, and automatically from the defendant's plea. Id. at 111-12.

Indeed, under Missouri law, civil commitment under the SVP statute, Mo. Rev. Stat. § 632.483, is a *possible* consequence of a guilty plea to certain sexual crimes, but it is *not mandatory*. Therefore, it is not a certainty that a defendant will be committed pursuant to the SVP statute when he pleads guilty to a sexual crime. See Morales v. State, 104 S.W.3d 432, 435 (Mo. Ct. App. 2003). The SVP statute is a civil, not a criminal statute, and commitment pursuant to it requires a separate process whereby, initially, a multi-disciplinary team determines whether an individual is a "sexually

13

violent predator." This determination is subject to evaluation by the Attorney General and another review committee. Ultimately, a judge determines whether the individual is a sexually violent predator. Thus, the process is lengthy and civil commitment is not mandatory. As such, commitment under the SVP statute does not definitely, immediately, and largely follow the entry of a guilty plea to a sexual crime and it is, therefore, a collateral consequence of a guilty plea. See George, 732 F.2d at 110; Morales, 104 S.W.3d at 436.

"Counsel only has an obligation to inform his client of the direct consequences of a guilty plea and has no duty to inform [a] client of collateral consequences of pleading guilty." Klaus v. Luebbers, 2009 WL 367697, at *2 (E.D. Mo. Feb. 11, 2009) (citing Rankin v. Moore, 2006 WL 3231960, at *12 (E.D. Mo. Nov. 7, 2006)). Under such circumstances, assuming, arguendo, that counsel did not inform Petitioner of the possibility of civil commitment under the SVP statute, counsel was not ineffective. See Hill v. Lockhart, 731 F.2d 568, 571 (8th Cir. 1984) ("'[P]arole eligibility is such an indirect and collateral consequence that the defendant need not be specifically advised by the court or counsel before accepting a guilty plea.").

The court finds, therefore, that the decision of the Missouri appellate court regarding the issue raised by Petitioner in his § 2254 Petition is not contrary to federal law and that it is a reasonable interpretation of federal law. Additionally, the court finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that the issue raised by Petitioner in his § 2254 Petition is without merit and that habeas relief on its basis should be denied.

## VI.
## CONCLUSION

14

For the reasons fully set forth above, the court finds that the issue raised by Petitioner in his § 2254 Petition is without merit and that, therefore, habeas relief on its basis should be denied. The undersigned further finds Petitioner does not raise an issue of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED**; Doc. 1

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability be **DENIED**.

The parties are advised that Petitioner has fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of May, 2012.